UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TYRIN GAYLE,

               Petitioner,

                                                      ORDER
      -against-
                                                      No. 16-CR-361-1 (CS)
UNITED STATES OF AMERICA,                  No. 20-CV-10086 (CS)

             Respondent.
-------------------------------------------------------x

Seibel, J.

      Before the Court is Tyrin Gayle's petition under 28 U.S.C. § 2255, (ECF No. 351 ("Pet.")),[1] and the parties' numerous subsequent submissions, (ECF Nos. 368-69, 371-75; No. 20-CV-10086 ECF Nos. 16, 21).  The Court assumes the parties' familiarity with the record in the underlying criminal case; the standards governing § 2255 petitions; the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019); and *Davis*'s progeny.  *Davis* rejected a case-specific approach to determining if an offense was a crime of violence under 18 U.S.C. § 924(c)(3)(B) – known as the residual or risk-of-force clause[2] – and required a categorical approach.  *See United States v. Barrett*, 937 F.3d 126, 128 (2d Cir. 2019).  Under that approach,

---

    [1]Docket references are to No. 16-CR-361 unless otherwise noted.

    [2]Section 924(c)(3) reads as follows:

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and –
(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

§ 924(c)(3)(B) was found to be void for vagueness.  *See id.*  Thus, convictions under 18 U.S.C. § 924(c)(1)(A)[3] that were based on underlying offenses that did not meet the requirements of 18 U.S.C. § 924(c)(3)(A) – known as the elements or force clause – or 18 U.S.C. § 924(c)(2) (defining "drug trafficking crime")[4] would have to be vacated.  *See id.*  The effect of *Davis*, as a practical matter, was to eliminate conspiracies to commit crimes of violence as § 924(c) predicates.

Petitioner argues here that his conviction on Count Six for violating § 924(c) must be vacated because one of its underlying predicate offenses – racketeering conspiracy (as charged in Count One) – does not meet the elements clause.  Although he acknowledges that the other predicate offense – narcotics conspiracy (as charged in Count Four) – remains a valid predicate under § 924(c)(2), he argues that the conviction violates the rule set forth in *Yates v. United States*, 354 U.S. 298 (1957), which stated that a conviction must be set aside if it is supportable on one ground but not another, and it is impossible to tell on which ground the jury relied, *id.* at 312.  He contends that that is the case here, because there was no evidence supporting a nexus between his gang's drug dealing and its use of firearms.  The Government concedes that racketeering conspiracy is no longer a viable predicate for a § 924(c) conviction, because, under the categorical approach mandated by *Davis*, it does not meet § 924(c)(3)(A), which requires the predicate offense to have "as an element the use, attempted use, or threatened use of physical

---

[3]Section 924(c)(1)(A) provides for a mandatory consecutive sentences for a person "who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . ."

[4]Under § 924(c)(2), the term "drug trafficking crime" includes "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)."

force," and § 924(c)(3)(B) is void for vagueness. But it argues that the conviction should stand for two reasons: 1) Petitioner's vagueness challenge to that count was procedurally defaulted because it could have been raised on direct appeal; and 2) that count's alternative underlying narcotics predicate remains valid after *Davis*, and any *Yates* error is harmless because on the facts here, the jury necessarily would have found Petitioner guilty of the § 924(c) count based on the valid predicate.

I.      Procedural Default

Failure to raise a claim on direct appeal forecloses review of that claim under § 2255, unless the movant can show either cause and actual prejudice, or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622-23 (1998). This is so even if, after the conviction has become final, there is a change in substantive law helpful to the movant. *See id.* at 621-22; *United States v. Thorn*, 659 F.3d 227, 231-33 (2d Cir. 2011). To show cause for failure to raise the issue on direct appeal, the movant must demonstrate an objective factor that prevented him from raising it, such as the claim being so novel that it was not reasonably available. *Bousley*, 523 U.S. at 622. To show prejudice, petitioner must show an error that "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (cleaned up). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

On direct appeal Petitioner raised the invalidity of racketeering conspiracy as a predicate for a § 924(c) conviction, but did not argue that the conviction had to be vacated because it was impossible to tell, under *Yates*, on which predicate the jury had based its verdict. Petitioner instead argued that the conviction had to be vacated because the evidence was insufficient to

3

show the use of firearms to further the narcotics conspiracy. The Government responded to that sufficiency argument. It also noted in its brief that although Petitioner "does not press the argument on appeal," (No. 18-262-cr ECF No. 59 at 20), he had raised a *Yates* error at sentencing, and it proceeded to explain why, in its view, no such error had occurred because the racketeering and narcotics evidence was inextricably intertwined, (*see id.* at 20-24). The Second Circuit, in affirming the § 924(c) conviction, assumed that the racketeering conspiracy could not support it but found sufficient evidence of the "requisite nexus" between the gun use and the drug trafficking. *United States v. Gayle*, 797 F. App'x 46, 50 (2d Cir. 2019) (summary order).[5] It did not address the *Yates* issue, evidently agreeing that it had not been raised on appeal.

The Government now argues that Petitioner's "*Davis* claim was procedurally defaulted because [he] failed to raise the claim on direct appeal," (ECF No. 368 at 6), and Petitioner responds, citing the language in footnote 5 above, that he did raise it, (No. 20-CV-10086 ECF No. 21 at 15). The Government's imprecise language is regrettable. Petitioner plainly did raise a *Davis*-related issue on appeal, but it is not the same one he is raising now. On appeal he argued that the § 924(c) conviction had to be vacated because *Davis* invalidated the racketeering

---

[5]It stated:

> Gayle also argues that following *United States v. Davis*, – U.S. – , 139 S. Ct. 2319, 204 L.Ed.2d 757 (2019), the racketeering conspiracy charged in Count One cannot, as a matter of law, serve as a predicate "crime of violence" offense to support the firearm offense charged in Count Six. The Government concedes that point. Government Brief at 12. We do not express an opinion on that argument. We do, however, expressly affirm Gayle's conviction under Count Six in sole reliance on the *narcotics* predicate charged in Count Four, as the Government urges us to do in their brief.

*United States v. Gayle*, 797 F. App'x 46, 50 n.2 (2d Cir. 2019) (summary order) (emphasis in original).

predicate and the evidence was insufficient on the narcotics predicate.  Here he argues that the § 924(c) conviction has to be vacated because *Davis* invalidated the racketeering predicate and the conviction might rest on that predicate, rather than the narcotics predicate.  The latter is a *Yates* argument, and it plainly was not raised on appeal.  It is thus procedurally defaulted absent cause and prejudice, or actual innocence.

Petitioner does not argue actual innocence, but cites ineffective assistance of counsel as the cause and the ten-year consecutive sentence on the disputed count as the prejudice.  (No. 20-CV-10086 ECF No. 16 at 3.)  "[A]n attorney's errors during an appeal on direct review may provide cause to excuse a procedural default."  *Martinez v. Ryan*, 566 U.S. 1, 11 (2012).

> The petitioner must prove both that (1) appellate counsel acted objectively unreasonabl[y] in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful . . . .  One of the main functions of appellate counsel, however, is to winnow out weaker arguments on appeal.  As a result, counsel is not required to present every nonfrivolous claim on behalf of a defendant appealing his or her conviction.  Thus, in attempting to demonstrate that appellate counsel's failure to raise a claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument.  Rather, a petitioner may demonstrate ineffectiveness of appellate counsel by showing that appellate counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.

*United States v. Romain*, No. 13-CR-724, 2019 WL 4493463, at *4 (S.D.N.Y. Sept. 19, 2019) (cleaned up), *report and recommendation adopted*, No. 18-CV-1195, 2019 WL 6830431 (S.D.N.Y. Dec. 13, 2019).

> Strategic choices, such as deciding which issues to raise on appeal, made after thorough investigation of the law and facts, are virtually unchallengeable.  The decision of appellate counsel to raise a claim on appeal that may reasonably be considered stronger than those asserted by the petitioner in a habeas petition is usually a well-reasoned tactical decision and does not constitute ineffective assistance of counsel.

*Reid v. Giambruno*, No. 03-CV-250, 2007 WL 3232497, at *9 (W.D.N.Y. Oct. 31, 2007) (cleaned up).

Here appellate counsel decided to attack the sufficiency of the evidence of the narcotics predicate rather than raising the *Yates* issue. This Court can discern no strategic reason not to pursue both arguments. The Circuit had already decided *United States v. Vasquez*, 672 F. App'x 56, 61 (2d Cir. 2016), a non-precedential opinion in which it rejected a *Yates* challenge to a § 924(c) conviction where it was clear that the verdict had not rested only on the invalid predicate. Appellate counsel's argument that there was insufficient evidence that the firearms use related to the drug trafficking, as opposed to the racketeering, would have equally supported a *Yates* argument that, unlike in *Vasquez*, here there was doubt as to whether the jury rested its § 924(c) conviction on the drug predicate or the racketeering predicate.

I do not reach a definitive conclusion on deficient performance, however, because the record does not contain appellate counsel's reasons for not pursuing the *Yates* issue, and it is not clear that the issue that was raised was "clearly and significantly weaker" than the *Yates* issue. But assuming substandard performance, I find, for the reasons discussed below on the merits, that the argument appellate counsel failed to raise would not have succeeded. This lack of prejudice means that the procedural default is not excused based on ineffective assistance of counsel.

II.     Merits

As noted, Count Six was predicated not just on the racketeering conspiracy charged in Count One, which is no longer considered a crime of violence, but also on a drug trafficking crime – the narcotics conspiracy charged in Count Four – which remains a valid predicate for a

§ 924(c) conviction under 18 U.S.C. § 924(c)(2).  *See United States v. Eldridge*, 2 F.4th 27, 36 n.9 (2d Cir. 2021) ("*Davis* interpreted only the definition of a crime of violence, and thus had no effect on the scope of drug offenses that may also serve as predicates for § 924(c) convictions, *see* 18 U.S.C. § 924(c)(2).").  But Petitioner argues that because the jury might have relied on the invalid predicate, the conviction must be vacated.  "The underlying principle, a species of the 'general verdict' rule originating with *Yates v. United States*, is that where the verdict is supportable on one ground, but not on another, the verdict should be set aside when it is impossible to tell which ground the jury selected."  *United States v. Riley*, No. 20-CV-2201, 2021 WL 2186229, at *4 (E.D.N.Y. May 28, 2021) (cleaned up) (collecting cases), *appeal filed*, No. 21-1579 (2d Cir. June 25, 2021).  The Government argues that any *Yates* error is harmless.

In *Hedgpeth v. Pulido*, 555 U.S. 57, 61-62 (2008), the Supreme Court held, in a case arising under 28 U.S.C. § 2254, that *Yates* errors are not structural and are reviewed for harmlessness as trial error under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  Under *Brecht*, collateral relief is authorized only if the error "had substantial and injurious effect or influence in determining the jury's verdict," 507 U.S. at 623.  The Second Circuit has recently noted that it has not formally decided whether the *Brecht* standard for harmless error applies to review under 28 U.S.C. § 2255.  *See Kassir v. United States*, 3 F.4th 556, 564 n.43 (2d Cir. 2021) (citing *Santana-Madera v. United States*, 260 F.3d 133, 140 (2d Cir. 2001) (declining to reach argument that "harmless beyond a reasonable doubt" standard should apply if no court has previously adjudicated harmlessness of error)).  But it has suggested that *Brecht* is the correct standard.  *See Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht* to § 2255 petition); *Peck v. United States*, 106 F.3d 450, 454 (2d Cir. 1997) (§ 2255 case noting that *Brecht* standard

applies); *see also Parker v. United States*, 993 F.3d 1257, 1265 (11th Cir. 2021) (applying standard articulated in *Brecht* – "substantial and injurious effect" – to *Davis* claim); *Granda v. United States*, 990 F.3d 1272, 1292 (11th Cir. 2021) (same); *United States v. Ivory*, No. 20-3179, 2021 WL 2801356, at *5 (10th Cir. July 6, 2021) (unpublished) (same). And while *Brecht* rested in part on considerations, such as state sovereignty, that do not apply under § 2255, it also relied on finality, the social costs of retrials, and the historical role of *habeas* of affording relief to those "grievously wronged," as opposed to those for whom there is a "reasonable possibility that trial error contributed to the verdict." 507 U.S. at 637. This Court concludes that *Brecht* supplies the appropriate standard for claimed *Yates* errors under § 2255. *See Riley*, 2021 WL 2186229, at *4 (applying *Brecht* to claim of *Yates* error based on *Davis*).

"Under this test, relief is proper only if the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict. There must be more than a reasonable possibility that the error was harmful." *Davis v. Ayala*, 576 U.S. 257, 267-68 (2015) (cleaned up); *see O'Neal v. McAninch*, 513 U.S. 432, 437 (1995) (petition should be granted "where the record is so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of an error").

"The *Brecht* standard is not met when a court can conclude that the jury would have 'necessarily found' the defendant guilty on the valid ground." *Riley*, 2021 WL 2186229, at *4 (cleaned up). "In the context of § 924(c), when a conviction rests on the use of a gun in relation to multiple predicates, and one of the predicates is later found to be invalid, the conviction may still survive if the § 924(c) charge is clearly supported by a predicate presenting no legal concern." *Rosario Figueroa v. United States*, No. 16-CV-4469, 2020 WL 2192536, at *4

(S.D.N.Y. May 6, 2020) (cleaned up).  Even on direct appeal, "where a challenged § 924 verdict undoubtedly rests on a valid drug-trafficking predicate, no *Yates* concern arises from a possible defect in a related 'crime of violence' predicate."  *Vasquez*, 672 F. App'x at 61; *see Eldridge*, 2 F.4th at 39 (no effect on substantial right under plain error review where jury would have returned a guilty verdict on § 924(c) count even if it had been instructed that it could base conviction only on valid predicate); *see also United States v. Coppola*, 671 F.3d 220, 237-38 (2d Cir. 2012) (*Yates* error harmless where jury necessarily would had convicted on basis of valid ground).

Thus, the question here is whether I have grave doubt as to whether the jury would have convicted Petitioner on the § 924(c) count even if it had been instructed that that count was predicated only on the narcotics conspiracy, not the racketeering conspiracy.  Petitioner argues that it would not have, because there was an insufficient nexus between the gun use and the drug trafficking.  (Pet. at 8-9; No. 20-CV-10086 Doc. 21 at 8-14.)  But the Second Circuit has already rejected that argument on direct appeal.  *See Gayle*, 797 F. App'x at 50 ("Gayle argues that – although there are instances of gun use and instances of drug trafficking – there was insufficient evidence to establish the requisite nexus between those two.  We disagree.").  The issue now, however, is not whether the evidence of nexus was sufficient to support the jury's verdict, but rather whether that evidence, while sufficient, was nevertheless weak enough as to leave me with grave doubt that the jury in fact would have convicted based only on the narcotics predicate.  I am not at all sure that there is a case in which both of those things could be true, but if there were, this is not it.

The evidence presented at trial included testimony from two cooperators that members of YTMG, the gang founded by Petitioner, sold drugs (primarily crack) in YTMG turf around William and Hasbrouck Streets in Newburgh; that they kept guns on their persons and in nearby stash locations for easy access; that the guns were for protection in case rivals came into their territory; and that they would help one another sell drugs by being armed, acting as lookouts and sharing customers.  (*See* Trial Transcript ("Tr.") 200-08, 874-75, 894-97.)  Law enforcement made numerous controlled buys, from Gayle and others, and seized numerous guns, as well as drugs, in that very area.  (Tr. 148-52, 400-01, 410-12, 462-510, 606, 633-35, 643-44, 708-09, 714-16, 732.)  YTMG's rival gang Southside sold drugs around South and Chambers Streets in Newburgh, (Tr. 164, 775), and members of both gangs engaged in tit-for-tat "drills" (incursions into the rival gang's territory) and shootings in each other's territory, (Tr. 44-53, 209-219, 223-232, 549-55, 743-46, 896, 907-11, 916-43, 1103-06).  Gayle himself linked the violence to the drug business when he told his girlfriend, "Drill and get money is all to do."  (Tr. 1341-42; Government Exhibit 505.)  Indeed, Petitioner came up with the name YTMG, which stood for Yellow Tape Money Gang, which referred to selling drugs (the money) and doing shootings (the yellow police tape that would follow).  (Tr. 160, 770-72.)

This evidence showed that the racketeering conspiracy and narcotics conspiracy were essentially co-extensive, or  "inextricably intertwined." *See Vasquez*, 672 F. App'x at 60-61; *see Parker*, 993 F.3d at 1264 ("The predicate offenses were inextricably intertwined so that if the jurors found one applicable  – which, given their guilty verdicts on Counts 4 and 5, we know they did – they had to reach the same conclusion with respect to the others.").  Petitioner points to no evidence admitted to prove the racketeering conspiracy that would not also have been equally

admissible to prove the narcotics conspiracy and vice-versa. The only narcotics conspiracy the Government endeavored to prove was the one among the members of YTMG, which is the racketeering enterprise, and the jury specifically found that one of the predicate acts of the racketeering conspiracy was a conspiracy to sell at least 280 grams of crack – the same conspiracy charged in Count Four. Petitioner asserts that the jury might have found the guns to be used only in connection with the racketeering conspiracy, but in light of the jury's finding that that racketeering conspiracy included the narcotics conspiracy, it is hard to see how the jury could have concluded that the guns were not used in connection with the narcotics conspiracy.

That is why, when Petitioner's counsel belatedly raised the issue at sentencing, I found that "on the evidence here, it is inescapable that [the jury] must have based the 924(c) conviction on both Count One, the RICO conspiracy, and Count Four, the narcotics conspiracy." (ECF No. 292 ("Sent. Tr.") at 24). I noted that the jury found the charged narcotics conspiracy to be a predicate racketeering act of the charged racketeering conspiracy, and that "[t]he evidence of the use of firearms in this case was all about the turf of YTMG and where it sold its drugs," making "[t]he narcotics conspiracy, on the evidence here . . . almost a lesser-included offense of the racketeering conspiracy." (*Id.*) The racketeering and narcotics predicates for the § 924(c) count were "inextricably intertwined . . . not only because the evidence doesn't really allow for any other inference, but the jury, in fact, found that." (*Id.* at 25.) Far from having grave doubt, I concluded – and continue to conclude – that it was not impossible to tell on which ground the jury based its § 924(c) conviction, because the jury "could not but have selected both grounds." (*Id.* at 25-26.) I remain unable to "think of a reasonable construction of the evidence that would find that the use of the weapon related only to the racketeering and not the narcotics," (*id.* at 27),

where the jury found, and the evidence overwhelmingly supports, that the narcotics activity was part of the racketeering activity.

*Eldridge*, on direct review, found no effect on substantial rights in similar circumstances: "Eldridge was not prejudiced by the district court's erroneous instruction with respect to the valid predicate crimes of violence, because the jury would have returned a guilty verdict on Count Seven even if it had been instructed that only attempted Hobbs Act robbery was a valid predicate under § 924(c)." 2 F.4th at 39. Here, too, "[i]n light of the overwhelming evidence of [Petitioner's] guilt and the jury's verdicts on other counts, there can be no doubt that the jury still would have returned a guilty verdict on Count [Six] even if the only theory presented had been [narcotics conspiracy]." *Id.* at 42.

Petitioner disagrees, citing *United States v. Heyward*, 3 F.4th 75 (2d Cir. 2021). (ECF No. 374.) There the Second Circuit rejected the argument that a racketeering conspiracy and a narcotics conspiracy underlying a § 924(c) count were inextricably intertwined, even though the jury had found the narcotics conspiracy to be part of the racketeering conspiracy. *Id.* at 82-85. I conclude that *Heyward* does not govern here, for three reasons.

First, it is distinguishable on its unique facts. The Circuit, while not going into detail, found – contrary to what I have found here – "a distinct factual separation between the gang violence . . . and [Defendant's gang's] charged narcotics activity," such that the jury could have found the gang violence to be unrelated to the narcotics activity. *Id.* at 83. Further, the trial court's jury instructions repeatedly referred to the racketeering conspiracy as a crime of violence, not a drug trafficking crime, even though the racketeering charge encompassed both, meaning that if the § 924(c) conviction were based on the racketeering count, the jury may have meant to

base it only on violence, not drugs. *Id.* at 84-85. Here, in contrast, while my charge allowed the jury to convict based on either a crime of violence or a drug trafficking crime, (Tr. 1582),[6] I did not use language suggesting that the racketeering conspiracy was *only* a crime of violence. Rather, I stated (once) only that it "qualified" as such. (*Id.*) Most significantly, the jury in *Heyward* specifically found that firearms were discharged in connection with the racketeering conspiracy but not the narcotics conspiracy. *See* 3 F.4th at 83. This finding "demonstrate[d] that an action taken in furtherance of the enterprise's non-drug-trafficking activity does not necessarily further its drug-trafficking activity [and thus] that the two categories of conduct are not, in fact, inextricably intertwined." 3 F.4th at 84. The record there "strongly support[ed] an inference that the weapons in *Heyward* were possessed in furtherance of racketeering, not drug trafficking," *Tavarez v. United States*, No. 16-CV-3884, 2021 WL 3741723, at *4 (E.D.N.Y. Aug. 24, 2021), but there is no basis for such an inference in this case.

Second, while declining to apply the *Vasquez* principle on the facts before it, the *Heyward* court acknowledged that that principle is "[s]ound . . . in general." 3 F.4th at 83; *see Tavarez*, 2021 WL 3741723, at *3. Third, this case comes before this court on collateral review, whereas *Heyward* involved direct review under the plain error standard, which is an easier hurdle to surmount. *See Napoli v. United States*, 32 F.3d 31, 36 (2d Cir. 1994) (plain error standard less stringent than standard under § 2255); *Harrison v. United States*, No. 07-CR-757, 2020 WL 4481937, at *5 (E.D.N.Y. Aug. 4, 2020) ("prejudice standard applied on collateral review is more demanding than is the plain error standard applied on direct appeal"); *see also Brecht*, 507

---

[6]The verdict form provided to the jury, in contrast to the one in *Heyward*, *see* 3 F.4th at 79, described Count Six as a "Section 924(c) Firearms Offense Relating to Counts One *and* Four," (Court Exhibit 8 (emphasis added)).

13

U.S. at 633 ("collateral review is different from direct review"); *United States v. Frady*, 456 U.S. 152, 166 (1982) ("[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.").

Thus, I continue to believe that the fact that racketeering conspiracy is "retroactively [not a] crime[] of violence . . . as defined in § 924(c) . . . did not affect the jury's verdict." *Mayes v. United States*, No. 12-CR-385, 2021 WL 3111906, at *8 (E.D.N.Y. July 21, 2021) (collecting cases), *appeal filed*, No. 21-2119 (2d Cir. Sept. 1, 2021). It is true that many cases finding § 924(c) predicates to be inextricably intertwined involved offenses that arose from "singular incidents of criminal conduct," *United States v. Minaya*, 841 F. App'x 301, 305 (2d Cir.) (summary order), *cert. denied*, 141 S. Ct. 2712 (2021), such as the robbery and kidnapping of the same person, *see id.*, the robbery of drug dealers and the distribution of the drugs thereby obtained, *see Vasquez*, 672 F. App'x at 61; *Tavarez*, 2021 WL 3741723, at *3, and the conspiracy to murder and attempted murder of the same person, *see Pagan v. United* States, No. 16-CV-601, 2021 WL 4973629, at *4-7 (D. Conn. Oct. 25, 2021) (collecting cases); *Mayes*, 2021 WL 3111906, at *8. But here, if one were to create a Venn diagram of the evidence of the narcotics conspiracy and the evidence of the racketeering conspiracy, they would essentially entirely overlap. And courts have found narcotics and racketeering conspiracies to be inextricably intertwined, albeit in connection with guilty pleas where the allocution established the interconnectedness of the two conspiracies. *See United States v. Kilpatrick*, No. 15-3012, 2021 WL 3354737, at *3-5 (2d Cir. Aug. 3, 2021) (summary order); *United States v. Bido*, No. 14-CR-212, 2021 WL 1141319, at *3 (S.D.N.Y. Mar. 23, 2021); *Benjamin v. United States*, No.

15-CR-445, 2020 WL 4887054, at *2 (S.D.N.Y. Aug. 20, 2020), *appeal dismissed*, No. 20-3181, 2021 WL 1084723 (2d Cir. Mar. 1, 2021).

Based on the record in this case, I have little doubt that the *Yates* error did not have a substantial and injurious effect on the verdict. "[T]he § 924(c) charge is clearly supported by a predicate presenting no legal concern." *Rosario Figueroa*, 2020 WL 2192536, at *4 (cleaned up).[7] Accordingly, the Petition is denied.

But because the Circuit has not definitively stated that *Brecht* is the applicable standard, and because the Court has not found a case in which a narcotics conspiracy and racketeering conspiracy were found to be inextricably intertwined based on the record from a trial, I think it prudent to issue a certificate of appealability ("COA") on the following issues: 1) Does *Brecht* supply the appropriate standard for claimed *Yates* errors under § 2255?; and 2) Does the record here support the finding that the § 924(c) verdict was supported by the narcotics conspiracy predicate? *See* 28 U.S.C. § 2253(c) (to obtain certificate of appealability, petitioner must make "a substantial showing of the denial of a constitutional right"); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (required substantial showing made "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further").

---

[7] For the same reasons – save for the difference between plain error and *habeas* review – I find that the failure to raise the *Yates* issue on appeal did not prejudice Petitioner because that argument would not have succeeded. On the same basis I find harmless any error in giving only a general unanimity instruction, rather than informing the jury specifically that it had to be unanimous as to which predicate underlay the § 924(c) conviction. *See United States v. Kennedy*, 576 F. App'x 76, 81 (3d Cir. 2014) (no plain error on direct review where general unanimity instruction given and jury would have found defendant guilty even if instructed that it had to agree unanimously as to predicate crime supporting § 924(c) conviction); *United States v. Gomez*, 580 F.3d 94, 103 (2d Cir. 2009) (same).

Conclusion

For the reasons stated above, the Petition is denied. A certificate of appealability is issued as set forth in the previous paragraph. The Clerk of Court is respectfully directed to: 1) terminate ECF No. 351 in No. 16-CR-361 and ECF No. 20 in No. 20-CV-10086; 2) close No. 20-CV-10086; and 3) send a copy of this Order to Tyrin Gayle, No. 77732-054, USP Canaan U.S. Penitentiary, P.O. Box 300, Waymart, PA 18472.

SO ORDERED.

Dated: November 8, 2021
      White Plains, New York

                                        *Cathy Seibel*
                            CATHY SEIBEL, U.S.D.J.